## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGETTE FRANZONE, and JONATHAN MANN, <br><br><br>Plaintiff, <br><br>vs. <br><br>SUSAN CHANA LASK, ESQ., a/k/a SUSAN LUSK, a/k/a SUSAN LESK, <br><br>Defendant. | ) **Case No.:14-CV** <br>) <br>) **CIVIL COMPLAINT** <br>) <br>) **JURY TRIAL IS DEMANDED** <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) |

**COMES NOW,** the Plaintiffs, GEORGETTE FRANZONE and JONATHAN

MANN, alleging and complaining, as follows:

### NATURE OF THE ACTION

1.     This action exists as a legal malpractice claim involving a breach of

fiduciary duty, fraud, and unjust enrichment, where by reason of Defendant's stalking,

attempted extortion and invasion of privacy there exists additional claims for the

intentional and/or negligent infliction of emotional distress where the Defendant, SUSAN

CHANA LASK, Esq., a/k/a SUSAN LUSK a/k/a SUSAN LESK, an attorney ("LASK")

acted with a fraudulent, purposeful, and ongoing scheme involving a pattern of negligent,

gross negligence and intentional activities interplayed between the normal undertakings in

her capacity as an attorney to Plaintiffs and in her personal affairs with Plaintiff

GEORGETTE FRANZONE ("FRANZONE"); where LASK improperly used her license to practice law so as to track down and stalk Plaintiff FRANZONE where said stalking was committed in multiple jurisdictions including the states of Florida, New York and New Jersey; where Defendant misrepresented her qualifications as having graduated from law school so as to fraudulently induce Plaintiff FRANZONE to retain her services and so as to fraudulently induce Plaintiff JONATHAN MANN ("MANN") to act as a guarantor of payment to her to enter into an attorney-client relationship with her; where said representation violated Defendant's fiduciary duties to Plaintiffs, where said fiduciary duties required Defendant to avoid a conflict of interest as to the fiduciary duty owed to Plaintiffs; where Defendant LASK intentionally failed to obtain a knowing and informed waiver to represent Plaintiff FRANZONE in her capacity as an attorney in matters where she was a direct witness; where LASK failed to inform or intentionally misinformed Plaintiffs FRANZONE and MANN as to the nature of the conflict; where by reason of the fraud defendant demanded and wrongfully received in her personal name in excess of $15,000.00 from FRANZONE and MANN; where said representation was undertaken as a means of control over FRANZONE and in direct conflict of Defendant's legal representation of FRANZONE in matters involving LASK's former client Liliana Narbone ("Narbone") as and for Narbone's false claims against FRANZONE; wherein Defendant LASK engaged in conduct and pursuit of Plaintiff FRANZONE for Defendant's own prurient and carnal interest; where when Plaintiff FRANZONE sought

to terminate the attorney client-relationship, LASK while trying to force FRANZONE to maintain her personal relationship with her, LASK placed a loaded a gun in her own mouth threatening to shoot herself and FRANZONE if she did not maintain her relationships with her; where FRANZONE was placed in direct fear for her life; where thereafter LASK continued to stalk FRANZONE to her home in the State of Florida on July 22, 2011 and again on May 25, 2012; where LASK illegally obtained a credit report from a national credit reporting agency threatening to "send it to everyone"; where LASK contacted friends and family of Plaintiff falsely advising them that FRANZONE was a "deadbeat her credit was shit, she was going to jail and owed her $100,000.00 in legal fees"; where LASK falsely claimed FRANZONE owed her $100,000 in legal fees; where thereafter, LASK for the reason of her conflict intentionally failed to timely institute a state court action for false arrest, malicious prosecution and other state law claims against Narbone; where upon finding that LASK had committed legal malpractice FRANZONE and MANN made due demand for the return of said retainer fees; where in response thereto LASK attempted to file false criminal charges of extortion with the Manhattan District Attorney's Office against FRANZONE and her attorney; where thereafter LASK although she knew that she was engaging in abuse of the legal system and the means afforded citizen in the right to pursue lawful claims of wrongdoing did while maliciously intending to injure Plaintiff FRANZONE and for

an ulterior purpose and motive as was the underlying use of said process did maliciously file a false claim in the United States District Court for the Southern District of New York and did knowingly and falsely claim legal fees due and owing of Franzone together with other false claims in furtherance of her own prurient-carnal claims whereby reason of the foregoing legal malpractice and otherwise including LASK's acts of negligence, gross negligence, carelessness, recklessness or other intentionally false, wilful or improper acts and reasons, Plaintiff FRANZONE suffers from emotional distress, sleepless nights, depression, fear apprehension and anxiety and is entitled to damages to be proven at trial for the infliction of emotional distress; where by reason of the foregoing, Plaintiff has incurred unnecessary legal fees in excess of $100,000.00; where by reason of the loss in her right to state law claims as against Narbone and others for her false arrest and other tortious acts Plaintiff FRANZONE has been damaged in an amount to be proven at trial, where by reason of LASK's conduct Plaintiffs are entitled to return of their retainer fees in the sum of $15,000.00; where by reason of LASK's conduct Plaintiffs are entitled to exemplary damages.

2.      Plaintiffs' allegations are based upon personal knowledge and, upon information and belief, based on the investigation and research of relevant documents obtained as well as publically available materials related to all other facts alleged in the Complaint.

## DIVERSITY OF CITIZENSHIP JURISDICTION

3.     This Court has jurisdiction over the subject matter of this complaint pursuant to 28 USC §1332, for the reason that there is complete diversity of citizenship between the parties and the amount in controversy, as to each defendant, exceeds $75,000.00, exclusive of interest and costs.

## VENUE

4.     Venue is appropriate in the United States District of the Southern District of New York pursuant to 28 U.S.C. §1391, because a substantial part of the events giving rise to the dispute occurred in this district, a substantial part of the property that is the subject of the action is situated in this district, and the Court has personal jurisdiction over each of the parties as alleged throughout this Complaint for activities which have caused injury to the Plaintiffs in New York and elsewhere.

## THE PARTIES

**Plaintiffs:**

5.     GEORGETTE FRANZONE was and is domiciled and a resident of the State of Florida.

6.     JONATHAN MANN was and is domiciled and a resident of the State of Florida.

**Defendant:**

7.     Defendant, Susan Chana LASK, a/k/a SUSAN LUSK, a/k/a SUSAN LESK is an individual domiciled and resident of the State of New Jersey.

## FACTUAL BACKGROUND

8.     At all times material hereto, in 2009 Plaintiff FRANZONE became a named Defendant in an action styled *Liliana Narbone vs. Georgette Franzone,* ("Narbone") venued in Kings County New York, assigned Index No. 010239/2009.

9.     That Plaintiff was served with the summons and complaint in that matter in or about May 2009, wherein Narbone falsely alleged that FRANZONE had given her a Promissory Note ("Note") in the amount of $100,000.00 and that FRANZONE had defaulted on payment to Narbone after due demand.

10.    At all times material hereto, Defendant LASK, a former paramour of Narbone was the attorney for Narbone in the aforesaid Note action.

11.    Plaintiff Answered Narbone's Complaint asserting several affirmative defenses including allegations of a forgery concerning the Note.

12.    That, upon information and belief, at all times material hereto, LASK knew and was aware the Note was a forgery and was not executed by FRANZONE as evidence of a debt for payment due Narbone.

13.    That at all times material hereto, prior to April 23, 2010, so as to obtain a civil advantage over Plaintiff, and so as to intimidate Plaintiff Narbone intentionally initiated a plan and/or schemed and otherwise conspired with others to have Plaintiff FRANZONE wrongfully arrested in the State of New York based on false allegations of harassment.

14. That in furtherance of Narbone's plan, on or about April 23, 2010, Plaintiff was wrongfully arrested and detained by the New York City Police on the false complaint filed by Narbone.

15. Plaintiff was detained for in excess of 34 hours and was unable to leave an area of confinement controlled by the police where she knew she was confined and not able to leave of her own free will.

16. That at all times material hereto, prior to April 23, 2009, LASK knew and was aware of the intended future plans of Narbone to have Plaintiff wrongfully arrested, and failed to take action to prevent the false arrest of the Plaintiff.

17. At all times material hereto, Defendant LASK, although she knew the Note was a forgery made a motion for summary judgment based on the terms of the Note and the demand.

18. The motion for summary judgment was denied based on the factual claims made by FRANZONE that the Note was an obvious forgery.

19. After losing the Motion for Summary Judgment, in or about June 2009, Narbone terminated her attorney client relationship with LASK.

20. At all times material hereto, LASK believing Narbone would implicate her in the forged Note scheme and her advance knowledge of Narbone having FRANZONE falsely arrested in or about July 2010 began to frantically hunt down

FRANZONE contacting Plaintiff's former attorneys, creating false names and other false monikers so as to hide her true identity and get to FRANZONE.

21. In or about October 2010, LASK contacted FRANZONE via the internet using the name angel78903@hotmail.com and falsely advisedFRANZONE that she had only recently discovered what Narbone had done and wanted to help FRANZONE for all of the trouble she caused in representing Narbone.

22. That in or about September 2010, although she knew the statements to be false, LASK told FRANZONE that she had discharged Narbone as a client inasmuch she had discovered that Narbone had tricked her into representing her against Plaintiff, as she had learned that Narbone was a convicted felon, guilty of possessing counterfeit money, served time in jail, and that she had learned the Note was a forgery after she had begun representing Narbone and did not know Narbone was planning to have FRANZONE falsely arrested before FRANZONE's actual arrest, wherein LASK stated that she wanted to be a witness for FRANZONE as against Narbone.

23. Despite the fact LASK was Narbone's former attorney with the knowledge of her wrongdoing and fully aware of Narbone's plans, wherein she did nothing to stop Narbone and actually aided Narbone in her illegal acts, over the course of the next several months LASK hoping to gain emotional control of FRANZONE offered legal advice to FRANZONE seeking to win her trust and confidence for her own prurient/lascivious interest.

24.    At all times material hereto, FRANZONE questioned LASK about how she could become a witness against Narbone, her ex-client.

25.    LASK, although she knew otherwise, falsely responded that it was her duty to stop Narbone from continuing to lie and that she had a right to "expose Narbone" for "perjury".

26.    In order to further win the trust and confidence of the Plaintiff LASK advised FRANZONE that she would speak to the attorney representing her at the time and let them know she would testify for her as a witness against Narbone.

27.    In reliance of said statement FRANZONE immediately contacted her attorney advising him of LASK's discharge of Narbone as her client and her desire to help and be a witness against Narbone concerning the forgery.

28.    FRANZONE's attorney was skeptical and advised her that it was highly unprofessional and that he thought she should stay away from LASK as she was a "kook".

29.    FRANZONE advised LASK of the matter. LASK became enraged, wherein so as to gain the trust and confidence of FRANZONE, LASK told FRANZONE that her attorney was committing malpractice; that she needed to get rid of her attorney and that she would get her representation in the Narbone Note matter through a third-party attorney.

30.     At all times material hereto, LASK told FRANZONE that while she could not directly represent her in claims against Narbone for the Note she could represent her in an action against Narbone and City of New York-New York City Police Department ("City") and would not charge FRANZONE but would seek a fee as part of the award in any recovery obtained by her as against Narbone and the City involving the false arrest matter.

31.     At all times material hereto, FRANZONE relied on the representations of LASK and discharged her attorneys.  After discharging her attorneys and at the direction of LASK, FRANZONE retained Elena Giordano to represent her in the Note action commenced by Narbone and in related actions involving Plaintiff's former business associates in the matters venued in Brooklyn Supreme Court, Kings County Index No's.040593/2007, 04594/2007, 025674/2007 and 010239/2009.

32.     Thereafter, FRANZONE paid $2,500.00 to Elena Giordano as and for payment in her representation of her in the Narbone's Note and other actions.

33.     At all times material hereto, LASK knew her actions were in conflict of her fiduciary duties and that she could not represent Plaintiff FRANZONE in any action involving Narbone as to the false arrest claims for the reason that she was a direct witness and that without a full waiver of conflict from Narbone and without a knowing conflict waiver from FRANZONE she would violate her fiduciary duties in the matter as she was a witness in the case.

34.     Despite not having the waiver of conflict or otherwise ensuring that FRANZONE had sought legal counseling regarding the conflict; despite advising Plaintiff to fire her existing attorneys; despite promising Plaintiff not to charge legal fees except by reason of recovery, thereafter LASK demanded that FRANZONE pay her a retainer fee and that if she did not receive a retainer fee of $20,000.00, she would not represent her in her civil rights and false arrest actions.

35.     In response to LASK's demand Plaintiff sought the assistance of JONATHAN MANN, for payment to LASK, wherein, FRANZONE agreed to repay MANN if he advanced the money to LASK.

36.     At all times material hereto MANN requested to speak with LASK before he would agree to make payment to LASK on behalf of FRANZONE whereupon inquiry by MANN in the presence of FRANZONE Defendant LASK stated to Plaintiffs she was a lawyer who graduated at the "top of her class", who was "well recognized" and "respected" in her "community".

37.     At all times material hereto, LASK directed Plaintiffs to visit her Website and search the Internet wherein upon viewing her Website and searching the Internet they read testimonials and viewed advertised, displayed and/or posted publishings attesting to the fact that LASK was a graduate of Temple Law School holding a Juris Doctorate degree conferred on her for the completion of her studies of law school at said law school.

38.     That at all times material hereto, Plaintiffs asked LASK what year she graduated from Temple wherein LASK replied 1989, whereupon Plaintiffs relied on said statements and viewings of the published information concerning the claimed educational background of LASK and that a degree was conferred upon her LASK's by Temple School of Law.

39.     That at all times material hereto, Plaintiff is informed and believes the Defendant LASK is not a law school graduate for said law school or any other law school and licensed attorney authorized to practice law in the State of New York.

40.     That at all relevant times hererto, the defendant was acting in her capacity as an attorney licensed to practice law in the State of New York.

41.     At all times material hereto, LASK told MANN of her former representation with Narbone and her knowledge that the Note was a forgery and that Narbone had FRANZONE falsely arrested wherein she-LASK would be a witness against Narbone and would represent FRANZONE in her actions against Narbone and the of New York for the Claims of false arrest.

42.     At all times material hereto, MANN asked LASK if a conflict of interest existed for the reason of LASK's former representation of Narbone and that she was a potential witness as against Narbone.

43.     At all times material hereto, LASK, although she knew otherwise intending to falsely induce MANN into making payment for FRANZONE, denied the conflict and

advised MANN that there was no conflict and that she was within her rights to represent FRANZONE because Narbone had lied to her.

44. At all times material hereto, LASK stated to MANN that if she received the retainer fee of $20,000.00 she would "sue Narbone and the City by Christmas".

45. On or about December 10, 2010, plaintiffs and defendant entered into a written agreement whereby Defendant agreed with MANN, as guarantor of payment, and with FRANZONE to represent Plaintiff FRANZONE as her attorney in matters arising in New York State and involving claims filed against her by Liliana Narbone, and so as to seek claims on her behalf against Narbone for the false arrest of Plaintiff in the State of New York and for a violation of Plaintiff's civil rights by Narbone, the New York City Police Department and others defendants.

46. The contract upon which this action is based was made in the State of Florida and was to be performed in the State of New York. **[Exhibit "A".]**

47. In reliance on the statements on or about December 2010, MANN paid LASK $15,000.00 on behalf of FRANZONE as and for the prosecution of FRANZONE's false arrest claims against Narbone and the City of New York-New York City Police Department.

48.     Thereafter, on or about December 13, 2010, LASK appeared at a 50H hearing taken by the City of New York as the attorney of record for FRANZONE.

49.     At all times material hereto, LASK knew the statements were false and made to induce Plaintiffs to make payment to her so as to believe that no conflict existed in her being a witness against Narbone and the attorney for FRANZONE.

50.     At all times material hereto, in or about February 2010, FRANZONE who, together with MANN was anxious to have the action against Narbone and the City commenced, while at Defendants home in the State of New Jersey, requested to see the action LASK had agreed to commence against Narbone and the CITY no later than Christmas 2010.

51.     At all times material hereto, in response to FRANZONE's request LASK told FRANZONE she was working on it and that she was in "no hurry" she had plenty of time to file the Complaint.

52.     At all times material hereto, in or about February 2011, FRANZONE told LASK that she and MANN agreed to pay LASK's retainer on the promise that she would commence against Narbone and the CITY no later than Christmas.

53.     At all times material hereto, in or about February 2011, FRANZONE told LASK that she thought it would be best to terminate her relationship with LASK and return the retainer to MANN.

54.     In response thereto LASK, who was licensed to carry firearms, placed a loaded gun in her mouth threatening to kill herself and FRANZONE if FRANZONE terminated their relationship.   In fear for her life FRANZONE fled New Jersey and returned to her home State in Florida.

55.     That shortly thereafter, LASK called FRANZONE telling her she was acting "crazy" because her doctor mixed up her medications and requested FRANZONE to forgive her.   She was getting help and her conduct would not be repeated.

56.     Thereafter, LASK, who was intending to divert attention away from her conflict and the fact that she could not represent FRANZONE in the false arrest claim, told FRANZONE she had run a credit check on her wherein she told FRANZONE that she was only trying to help her and that she needed to file chapter 7 and discontinue all of her claims.

57.     That despite her duty to file a timely action as against Narbone and the New York City Police Department and others for false arrest LASK failed to do so with the proscribed statutory time as proscribed by law.

58.     Over the course of the past several years LASK has stalked or otherwise interfered in the affairs of FRANZONE including placing herself and otherwise interfering in the business affairs of FRANZONE and her former business partners; appearing uninvited in the State of Florida on July 22, 2011 and again on

May 25, 2012; in or about September 2011 falsely advising the Manhattan District Attorney's Office of a claim involving allegations that FRANZONE and her attorney were attempting to extort recovery of MANN's $15,000.00 retainer payment by means of sexual exploitation of her; and by filing a false, malicious defamatory claim in the United States District Court for the Southern District of New York falsely claiming that Plaintiff was involved in sex for services with her attorney who took FRANZONE away from her; by appearing at FRANZONE's home and demanding to see and speak with her; by LASK leaving an untold number of messages claiming her affections for her; by calling FRANZONE's relatives falsely claiming FRANZONE was a "dead beat" who owed her in excess of $100,000.00 in legal fees.

## COUNT I
## LEGAL MALPRACTICE
## BREACH OF FIDUCIARY DUTY
(On Behalf of FRANZONE)

59.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs "1" through "58" above.

60.     There was a fiduciary relationship of trust, reliance and confidence by the Plaintiff FRANZONE in response to the claims of the Defendant LASK and her agreement to represent Plaintiff as her attorney.

61.     Defendant LASK owed Plaintiff FRANZONE a fiduciary duty to act at all times in good faith and in her best interests, and had a duty, among other things, to perform the legal services for which she was retained with reasonable care and skill; to act in the highest and best interests at all times and to not put her own interest in front of Plaintiff's.

62.     This fiduciary and confidential relationship was never repudiated by Defendant at any time herein mentioned and LASK owed the duty both during her legal representation and after she was discharged to maintain her confidences to Plaintiff and otherwise to refrain from interfering in FRANZONE's personal affairs and legal matters.

63.     Defendant LASK breached her fiduciary duties and obligations to FRANZONE by doing all of the acts and omissions as heretofore alleged; including among other things, Defendant LASK breached her duty to FRANZONE by failing to truthfully, and properly counsel and advise   her as to her conflict in representing Narbone and then FRANZONE; failed to seek and obtain a waiver from FRANZONE and Narbone so as to be able to appear and truthfully testify as a witness for Plaintiff to such an extent that the conflict forced FRANZONE to incur excessive and unnecessary legal fees so as to ultimately obtain a dismissal of Narbone's case with prejudice; by failing to timely file a state court action within the time limits proscribed by law concerning her conflict in pursuing the claims against

Narbone for malicious prosecution, abuse of process, false arrest, and by generally mishandling, mismanaging her claims.

64.     In doing or failing to do all of the above described acts and omissions constituting Defendant's breach of her fiduciary duties as owed to FRANZONE, FRANZONE sustained damages, including but not limited to, legal fees incurred in the sum of $105,000.00; loss in direct state court claims for false arrest, malicious prosecution and other intentional torts.

65.     The acts and omissions constituting the breach of Defendant's fiduciary duties were committed negligently, were grossly negligent, careless and reckless or were committed with oppression, fraud and/or malice within the meaning of the law.

66.     But for the foregoing, LASK has been unjustly enriched and received payment for services not otherwise performed.

67.     That the legal services provided fell below the standard of care followed by other attorneys. The Defendant breached her fiduciary duty to the Plaintiffs.

68.     But for the foregoing departure from the legal standard owed by a fiduciary which should have been afforded Plaintiff by LASK, Plaintiff would not have suffered injury in the loss of her right to bring state court claims again Narbone and others and would not have incurred the additional legal fees and expenses.

69.     But for the foregoing, Plaintiff, in addition to actual damages, is entitled to recover exemplary damages for the sake of example and by way of punishing Defendants.

## COUNT II.
## UNJUST ENRICHMENT
(On Behalf of FRANZONE and MANN)

70. Plaintiffs repeat and reallege paragraphs "1" through "69" as though fully set forth herein.

71. The money that Defendant derived from the financial transaction involving her legal representation of Plaintiff FRANZONE was obtained unjustly, especially in light of the conflict LASK had in relation to her representation of Narbone and subsequent legal representation of FRANZONE, wherein LASK received $15,000.00 from Plaintiffs.

72. But for the foregoing misleading, deceptive and unfair conduct by Defendant LASK, Plaintiff FRANZONE would not have signed the Retainer which resulted in the purported transfer of funds to LASK by MANN.

73. Because the Defendant's retention of the money was derived through fraudulent and unconscionable conduct it was, therefore, unearned, and Defendant was unjustly enriched by retaining that money.

74. Defendant's retention of the unearned benefit of the money paid by MANN to LASK or on behalf of FRANZONE as a result of a fraud perpetrated on the Plaintiffs would be inequitable and constitute unjust enrichment.

75. Defendant's retention of that money violates fundamental principles of justice, equity and good conscience.

## COUNT III.
### EXTORTION/COERCION
(On Behalf of FRANZONE)

76.     Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs "1" through "75" above.

77.     April 28, 2011, Defendant LASK in violation of both state and federal law illegally-wrongfully, via electronic means, over the Internet or telephonic lines obtained an unauthorized credit report containing the credit history of the Plaintiff FRANZONE.

78.     That on or about May 4, 2011 LASK told FRANZONE she would reveal her credit report to others and threatened to place the same over the Internet if Plaintiff continued to request the return of the retainer fee of $15,000.00 paid by MANN.

79.     Thus, Defendant LASK threatened to inflict emotional distress and economic harm on the Plaintiff with the intent to extort a thing of value.

80.     Upon information and belief, the threat originated in New York or New Jersey resulting in harm to Plaintiff FANZONE in the State of Florida and therefore New York, New Jersey and/or Florida law would apply.

81.     Such conduct is in violation of Fla. Stat. § 784.048 cyber stalking and Fla. Stat. §836.05 and extortion/coercion.

82.     Such conduct is in violation of New York Penal Law §240.30 cyber stalking and §135.60 Extortion/Coercion in the second degree.

83.     Such conduct is in violation of New Jersey Stat. §2C:12-10, 2C:12-10.1 cyber stalking and 2C:20-5 extortion/coercion in the second degree.

84.     The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant LASK's extortion/coercion

85.     But for the foregoing, Plaintiff, in addition to actual damages, is entitled to recover exemplary damages for the sake of example and by way of punishing Defendants.

## COUNT IV.
## EXTORTION/COERCION
### (On Behalf of FRANZONE)

86.     Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs "1" through "85" above.

88.     That in or about September 2011, LASK intending to extort or otherwise coerce FRANZONE from demanding repayment of MANN's legal fees falsely reported a claim of extortion/coercion to the Manhattan District Attorney's Office alleging FRANZOINE was attempting to use sexual exploitation of her as a means of recovery from LASK.

87.     Upon information and belief, the threat originated in New York or New Jersey resulting in harm to Plaintiff FANZONE in the State of Florida and therefore New York, and/or Florida law would apply.

88.     Such conduct is in violation of Fla. Stat and Fla. Stat. §836.05 and extortion/coercion.

89.     Such conduct is in violation of New York Penal Law §135.60 Extortion/Coercion in the second degree.

90.     Thus Defendant LASK's activities were a threat intended to inflict emotional distress on the Plaintiff with the intent to extort/coerce a thing of value or otherwise force Plaintiff to abandon her lawful claims.

91.     Thus Defendant LASK threatened to falsely report a crime for the purposes of economic and emotional gain with the intent to extort/coerce a thing of value.

92.     The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant LASK's attempted extortion/coercion.

93      But for the foregoing, Plaintiff, in addition to actual damages, is entitled to recover exemplary damages for the sake of example and by way of punishing Defendants.

**COUNT V.**
**INVASION OF PRIVACY**
(On Behalf of FRANZONE)

94.     Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs "1" through "93" above.

95.     The defendant intentionally intruded on the Plaintiff Franzone's solitude, seclusion, or private affairs of Plaintiff by calling a family member of the Plaintiff falsely advising said family member that FRANZONE was a "dead beat"

who owed her over $100,000.00 in legal fees and who was going to be put in jail for her criminal acts.

95.    The intrusion would be highly offensive to a reasonable person and was intended to injure Plaintiff FRANZONE and otherwise cause Plaintiff FRANZONE harm.

96.    The defendant's unreasonable, unpermitted, unjustified and otherwise unwarranted intrusion was a producing cause of the plaintiff's injury.

97.    But for the foregoing, Plaintiff, in addition to actual damages, is entitled to recover exemplary damages for the sake of example and by way of punishing Defendants.

### COUNT VI.
### <u>INTERSTATE STALKING</u>
(On Behalf of FRANZONE and MANN)

98.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs "1" through "97" above.

99.    Defendant LASK used an interactive computer service to engage in a course of conduct that caused the Plaintiff substantial emotional distress.

100.    Defendant LASK used an interactive computer service to engage in a course of conduct that caused the Plaintiff FRANZONE to be harassed, annoyed or otherwise alarmed.

101.   Defendant LASK intended to cause the Plaintiff substantial emotional distress.

102.   Such conduct is in violation of Florida State Statute 784.048

103.   Such conduct had no legitimate purpose.

104.   The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant LASK's stalking.

105.   But for the foregoing, Plaintiff, in addition to actual damages, is entitled to recover exemplary damages for the sake of example and by way of punishing Defendants.

### COUNT VII.
### <u>ABUSE OF PROCESS/ MALICIOUS PROSECUTION</u>
(On Behalf of FRANZONE)

106.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs "1" through "105" above.

107.   That there was an illegal, improper, or perverted use of the legal process, neither warranted nor authorized by the legal process filed by LASK in the Southern District of New York.

108.   There was an ulterior motive or purpose in exercising such use.

109.   The use of process under the circumstances set forth herein which was improper and was intended to injure Plaintiff FRANZONE and otherwise cause Plaintiff FRANZONE harm.

110.   The Defendant's use of process was unreasonable, unpermitted, unjustified and otherwise unwarranted such that it was a producing cause of the plaintiff's injury.

## COUNT VIII.
## FALSE ADVERTISING
## DECEPTIVE TRADE PRACTICES ACT
(On Behalf of FRANZONE and MANN)

111.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs "1" through "110" above.

112.   Plaintiffs were consumers as defined in the New York State General Business Law §§ 349, 350 (" N.Y. GBL").

113.   The defendant engaged in at least one of the false, misleading, or deceptive acts or practices listed in the N.Y. GBL §§ 349, 35.

114.   The Plaintiffs detrimentally relied on the false, misleading, or deceptive act and practices of the Defendant wherein Plaintiffs were intentionally sent to view Defendants website concerning the Defendant's education and /or other credentials.

115.   The defendant's false, misleading, or deceptive act or practice was a producing cause of the plaintiff's injury.

## COUNT VIII.
## INTENTIONAL AND/OR NEGLIGENT
## INFLICTION OF EMOTIONAL DISTRESS
(On Behalf of FRANZONE)

116.   Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs "1" through "115" above.

117.   As a direct and proximate result of the aforesaid conduct including stalking Plaintiff FRANZONE, the threatened use of loaded firearms and the filing of

false statements with the New York County District Attorney's Office, Defendant has engaged in the intentional and/or negligent infliction of emotional distress in both her duty owed to plaintiff FRANZONE as an attorney and her departure of tolerable conduct which exposed FRANZONE to an unreasonable risk of bodily injury or death.

118. Defendant's conduct unreasonably endangered plaintiff's physical safety causing the plaintiff to fear for her own safety.

119. The conduct of the defendant was heinous and beyond the standards of civilized decency and was utterly intolerable and otherwise outrageous.

120. LASK engaged in: 1) a pattern of conduct, not just an isolated incident; (2) the plaintiff was vulnerable and the defendant knew it; (3) the defendant was in a position of power; (4) threats of violence were used; knowingly false statements were made against her and (5) the defendant owed the plaintiff a fiduciary duty.

121. The actions of the defendant have actually caused the plaintiff's emotional distress.

122. The emotional distress suffered by the plaintiff was and remains severe, was and has been intensified in the duration of Defendant's acts over time, and has produced a physical manifestations of the distress in Plaintiff.

123. But for the foregoing, Plaintiff, in addition to actual damages, is entitled to recover exemplary damages for the sake of example and by way of punishing Defendants.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs demands judgment:

1)      On each of their claims and causes of action in an amount to be so stated therein or otherwise found to exist by a jury, including any award for punitive damages;

2)   For plaintiffs' attorneys fees and costs of suit; and

3)   For whatever additional relief the Court may determine to be just and equitable.

Dated on this 17th day of April 2014.

Douglas R. Dollinger, Esq.
The Law Offices of Douglas R. Dollinger, P.C.
& Associates
50 Main Street-Suite 1000
White Plains, New York 10606
Telephone: 845.915.6800
Fax: 845.915.6801
Email: d.dollinger@ddollingerlaw.com