```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
GEORGETTE FRANZONE, et al.,                     :
                                                                   OPINION AND ORDER
                         Plaintiffs,            :
            v.                                                     14 Civ. 3043 (GHW) (GWG)
                                                :
SUSAN CHANA LASK, ESQ.,
                                                :
                         Defendant.             :
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Georgette Franzone and Jonathan Mann have brought this action against defendant Susan Chana Lask, Esq., asserting a number of claims largely arising out of Ms. Lask's prior representation of Ms. Franzone. Plaintiffs are represented by Douglas Dollinger, Esq. Ms. Lask has moved for disqualification of Mr. Dollinger.[1] For the reasons stated below, this motion is granted.

I.      BACKGROUND

     A.      The Allegations in the Complaint

The complaint describes a series of events involving interactions between Ms. Franzone

---

[1] See Notice of Motion, filed June 11, 2014 (Docket # 18) ("Motion to Disqualify"); Memorandum of Law in Support of Defendant's Motion for Disqualification of Counsel, filed June 11, 2014 (Docket # 19) ("Def. Mem."); Declaration of Edward R. Grossi, Esq. in Support of Motion to Disqualify, filed June 11, 2014 (Docket # 20) ("Grossi Decl."); Declaration of Susan Chana Lask, Esq. in Support of Motion to Disqualify, filed June 11, 2014 (Docket # 21) ("Lask June Decl."); Memorandum of Law in Opposition to the Defendant's Motion to Disqualify Plaintiff's Counsel, filed June 26, 2014 (Docket # 28) ("Pl. Mem.") (under seal); Reply Memorandum of Law in Support of Defendant's Motion for Disqualification of Counsel, filed July 3, 2014 (Docket # 31); Declaration of Susan Chana Lask, Esq. in Support of Motion to Disqualify, filed July 3, 2014 (Docket # 30). As described further below, the parties sent letters to the Court following a hearing in this matter, which were filed under seal.

and Ms. Lask beginning in May 2009. At that time, Ms. Lask represented a person named Liliana Narbone in a suit against Ms. Franzone alleging that Ms. Franzone defaulted on her obligations to Ms. Narbone under a promissory note worth $100,000. See Civil Complaint, filed April 22, 2014 (Docket # 2) ("Compl."), ¶¶ 8-10. According to the complaint, Ms. Lask knew the note was a forgery. Id. ¶¶ 12, 17. In June 2009, Ms. Narbone terminated Ms. Lask as her attorney. Id. ¶ 19. The complaint alleges that in April 2010, Ms. Lask had advance knowledge of a plan by Ms. Narbone to arrange for Ms. Franzone to be falsely arrested. Id. ¶¶ 14-16, 20. The complaint alleges that sometime afterwards, Ms. Lask "began to frantically hunt down" Ms. Franzone, including by "contacting [Ms. Franzone's] former attorneys, creating false names and other false monikers so as to hide her true identity and get to" Ms. Franzone. Id. ¶ 20. In or about October 2010, see id. ¶ 21, Ms. Lask allegedly told Ms. Franzone that she learned the note was a forgery, that she was no longer representing Ms. Narbone, that she did not know Ms. Narbone had been planning to have Ms. Franzone arrested, and that Ms. Lask wanted to be a witness for Ms. Franzone against Ms. Narbone. Id. ¶ 22.

The complaint alleges that Ms. Lask gave Ms. Franzone legal advice over the next several months. Id. ¶ 23. It alleges that Ms. Franzone's attorney at the time found this improper but that when she relayed this to Ms. Lask, Ms. Lask became "enraged" and told Ms. Franzone she should discharge her attorney. Id. ¶¶ 27-29. The complaint alleges that Ms. Franzone eventually discharged her attorney on Ms. Lask's advice and retained a new attorney, Elena Giordano, "at the direction of" Ms. Lask to represent her in the "Note action" and other business matters. Id. ¶ 31.

Ms. Lask also offered to represent Ms. Franzone in a suit against Ms. Narbone, the City of New York, and the New York City Police Department in the false arrest matter on a

contingency basis.  Id. ¶ 30.  It is alleged that Ms. Lask later told Ms. Franzone "that if she did not receive a retainer fee of $20,000.00, she would not represent [Ms. Franzone] in her civil rights and false arrest actions."  Id. ¶ 34.  Ms. Franzone arranged for plaintiff Jonathan Mann to loan Ms. Franzone the money to pay Ms. Lask.  Id. ¶ 35.  In order to get the money from Mr. Mann, Ms. Lask allegedly stated that she would have no conflict in representing Ms. Franzone and that she would file the suit "by Christmas."  Id. ¶¶ 42-44.  On December 10, 2010, Ms. Lask entered into a written retainer agreement with Ms. Franzone, which was guaranteed by Mr. Mann.  Id. ¶ 45.  Mr. Mann paid Ms. Lask $15,000 on behalf of Ms. Franzone.  Id. ¶ 47.

The complaint alleges that Ms. Lask took steps to represent Ms. Franzone but did not file suit by Christmas of 2010.  See id. ¶¶ 48-52.  Accordingly, Ms. Franzone threatened to discharge Ms. Lask, id. ¶¶ 52-53, though Ms. Franzone apparently did not do so at that time.  Ms. Lask failed to file the suit within the limitations period, id. ¶ 57, and has since harassed Ms. Franzone, see id. ¶ 58.

The complaint purports to assert an array of causes of action, including legal malpractice, unjust enrichment, "interstate stalking," "extortion/coercion," false advertising, and "intentional and/or negligent infliction of emotional distress."  Id. ¶¶ 59-123.

B.      The February 11, 2015 Hearing

Ms. Lask's motion for disqualification is premised on Mr. Dollinger's representation of Ms. Lask in May 2011.  The parties' submissions as part of the briefing on this motion, however, reflected competing versions as to what transpired between Ms. Lask and Mr. Dollinger when she consulted with him and provided insufficient detail to allow the Court to make a determination as to the scope of the representation.  See Pl. Mem. at 6, 15; Declaration of Attorney Douglas R. Dollinger (annexed as Attach. 1 to Pl. Mem.) ("Dollinger Decl."), ¶¶ 2-11;

Def. Mem. at 1-2, 6; Lask June Decl. ¶¶ 2-6. Accordingly, and as explained further in part II.E below, on January 28, 2015, the Court issued an Order stating that it would hold an in camera hearing at which it would hear testimony from Ms. Lask and Mr. Dollinger on "what attorney-client privileged communications did Ms. Lask make to Mr. Dollinger in the period from Ms. Lask's first contact with Mr. Dollinger — apparently in May 2011 — until the filing of the complaint in this matter." Order, filed Jan. 28, 2015 (Docket # 70) ("Jan. 28 Order"). The hearing was held on February 11, 2015. See Transcript of Hearing Held on February 11, 2015, filed Feb. 20, 2015 (Docket # 72) (under seal). Neither Ms. Lask nor Mr. Dollinger elected to offer any exhibits at the hearing or accepted the Court's invitation to submit exhibits following the hearing. The parties also asked for the opportunity to give further briefing, which the Court granted.[2]

At the hearing, Mr. Dollinger testified under oath as to the topic set forth in the Jan. 28 Order, followed by testimony from Ms. Lask, followed by rebuttal testimony from Mr. Dollinger. Because the communications from Ms. Lask to Mr. Dollinger are protected by the attorney-client privilege, the Court will not reveal the content of these conversations, but will instead simply describe the scope of the representation to the extent necessary to characterize its relationship to the allegations in the complaint. The Court notes that while Mr. Dollinger had a different recollection of some of the conversations, there was significant overlap. To the extent there were differing recollections, the Court concludes that the nature of these conversations would have been of much greater significance to Ms. Lask — and thus more memorable to her

---

[2] Each side submitted a letter on February 20, 2015. (Docket ## 73 and 74). Ms. Lask submitted a responsive letter dated February 27, 2015 (Docket # 77), and Mr. Dollinger submitted a responsive letter dated March 6, 2015 (Docket # 78). All letters were filed under seal.

— as a person seeking legal advice than to Mr. Dollinger who, as a practicing attorney, would regularly be importuned by persons seeking advice.

In brief, the Court finds as follows: in the early afternoon of May 10, 2011, Ms. Lask telephoned Mr. Dollinger in order to seek legal advice. Mr. Dollinger and Ms. Lask had never spoken before. Nonetheless, Ms. Lask spoke to Mr. Dollinger in a series of telephone calls lasting many hours. On the first day, Ms. Lask spoke to Mr. Dollinger specifically for the purpose of obtaining legal representation from him. While Mr. Dollinger came to believe he was representing Lask for the "limited purpose of her relationship with Ms. Narbone," Ms. Lask had a much more expansive view of the purpose of the calls and the nature of Mr. Dollinger's representation. She viewed her dealings with Ms. Narbone and Ms. Franzone to be related and, in any event, was seeking advice in obtaining a release from both Ms. Narbone and Ms. Franzone.[3] Eventually, on May 20, 2011, Mr. Dollinger obtained a mutual release between Ms. Lask and Ms. Narbone in the form of a "Settlement Agreement." While Mr. Dollinger had contact with Ms. Franzone as a result of Ms. Lask's calls, he did not obtain a release from Ms. Franzone.

We find that the topics Ms. Lask spoke to Mr. Dollinger about on the first day and in the period up until May 20, 2011, included most of the topic areas raised in the complaint. Thus, Ms. Lask discussed with Mr. Dollinger the lawsuit between Ms. Narbone and Ms. Franzone (Compl. ¶¶ 8-12, 17-19), Ms. Franzone's wrongful arrest (id. ¶¶ 13-16), conversations she had

---

[3] Ms. Lask's interest in seeking a release from Ms. Franzone was corroborated by Mr. Dollinger's declaration. See Dollinger Decl. ¶¶ 2, 6, 29. Additionally, the emails from this period in the record from Mr. Dollinger show in the "subject" line "Re: Franzone" or "Narbone-Fazone [sic] Settlement." Emails from Douglas Dollinger, dated May 11 and 18, 2011 (annexed as Ex. A to Lask June Decl.).

5

with Ms. Franzone about the Narbone case (id. ¶¶ 33-34), Ms. Franzone's engagement of Ms. Lask as her attorney (id. ¶ 34-53), and the potential for Ms. Franzone to sue her for malpractice (id. ¶¶ 59-69).

## II.     DISCUSSION

### A.     Law Governing Disqualification Motions

Ms. Lask argues that plaintiffs' counsel, Mr. Dollinger, should be disqualified based on his prior representation of her. See Def. Mem. at 5-8. She also argues that Mr. Dollinger must be disqualified based on the "attorney witness" rule. See id. at 11-12. Because the Court concludes that disqualification must be granted based on the prior representation, it is unnecessary to reach the latter issue.

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (quoting Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)). In exercising this power, courts "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." Id. at 132 (citations and internal quotation marks omitted). Because disqualification motions interfere with a party's right to the counsel of its choice and are often made for tactical reasons, they are "viewed with disfavor," A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 160 F. Supp. 2d 657, 662-63 (S.D.N.Y. 2001) (citation omitted), and the party seeking disqualification must meet a "heavy burden of proof in order to prevail," Gormin v. Hubregsen, 2009 WL 508269, at *2 (S.D.N.Y. Feb. 27, 2009) (citation and internal quotation marks omitted). Nonetheless, "any doubt is to be resolved in favor of disqualification." Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975); accord CQS ABS Master Fund Ltd. v. MBIA Inc., 2013 WL 3270322, at *8

(S.D.N.Y. June 24, 2013); see also United States v. Oberoi, 331 F.3d 44, 51 (2d Cir. 2003) (noting that the "public's interest in the outcome [of litigation] is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case").

Although federal courts look to state disciplinary rules when considering motions for disqualification, such rules "need not be rigidly applied," Lyman v. City of Albany, 2007 WL 496454, at *3 (N.D.N.Y. Feb. 12, 2007) (citation and internal quotation marks omitted), as they "merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification," Hempstead Video, 409 F.3d at 132 (citation omitted).  "One recognized form of taint arises when an attorney places himself in a position where he could use a client's privileged information against that client.  The standard for disqualification varies depending on whether the representation is concurrent or successive." Id. at 133.  If the potential conflict arises, as here, from successive representation, an attorney may be disqualified if:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

Id. (quoting Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)); accord Plumbing Supply, LLC v. ExxonMobil Oil Corp., 2014 WL 6644221, at *3 (S.D.N.Y. Oct. 23, 2014); see also Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384, 1386 (2d Cir. 1976) ("The 'substantial relationship' test is indeed the one that we have customarily applied in determining whether a lawyer may accept employment against a former client.") (citations omitted).

In this case, the first requirement has been met.  Mr. Dollinger previously represented

Ms. Lask.  See Dollinger Decl. ¶ 8.  Accordingly, we turn to the question of whether there is a substantial relationship between the prior representation and the instant lawsuit and, if so, whether Mr. Dollinger had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of Ms. Lask.  We conclude by discussing the issue of waiver and explaining why the Court held the hearing.

      B.      Substantial Relationship

"A substantial relationship exists 'if the facts giving rise to an issue which is material in both the former and the present litigations are as a practical matter the same.'"  MBIA, 2013 WL 3270322, at *12 (quoting U.S. Football League v. Nat'l Football League, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985)).  "[T]he relevant inquiry is not limited to whether there are common legal claims or theories between the representations, but extends to whether there are common factual issues that are material to the adjudication of the prior and current representations."  Mitchell v. Metro. Life Ins. Co., Inc., 2002 WL 441194, at *8 (S.D.N.Y. Mar. 21, 2002).  "Thus, a substantial relationship will exist if 'facts which were necessary to the first representation are necessary to the present litigation.'"  MBIA, 2013 WL 3260322, at *12 (quoting U.S. Football League, 605 F. Supp. at 1459).

      Here, it is clear that there is a "substantial relationship" between the matters in the prior representation and the allegations of the complaint.  As already described, Ms. Lask discussed the lion's share of the conduct that underlies the central allegations of the complaint with Mr. Dollinger.  Indeed, Ms. Lask wanted Mr. Dollinger to get a release of any claims against Ms. Lask from Ms. Franzone because of Ms. Lask's prior dealings with Ms. Franzone — a release that would have barred the instant suit.  While we accept Mr. Dollinger's testimony that he came to believe that he could not obtain such a release because Ms. Franzone did not have an attorney

8

at that time, this does not alter the fact that Ms. Lask transmitted information on the topic of her dealings with Ms. Franzone to Mr. Dollinger as part of her effort to obtain advice.  Additionally, the fact that Mr. Dollinger ultimately may have asserted that he could not obtain the sought-after relief is of no moment as Ms. Lask's interest in this release were part-and-parcel of her effort to seek legal advice.  It is thus of no moment that Mr. Dollinger may not have believed he was ultimately retained by Ms. Lask specifically to obtain a release from Ms. Franzone.  See generally Seeley v. Seeley, 129 A.D.2d 625, 627 (2d Dep't 1987) (disqualification granted where party had two conversations that "embraced substantive issues" related to the litigation even though counsel was never retained); see also Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S .C.A., 258 F.R.D. 95, 100 (S.D.N.Y. 2009) ("An attorney-client relationship can arise prior to formal engagement.  As a result, privilege may attach to a prospective client's initial statements to an attorney who is not ultimately hired.") (citation and internal quotation marks omitted); Rose Ocko Found. v. Liebowitz, 155 A.D.2d 426, 427 (1st Dep't 1989) (attorney-client relationship can encompass a "preliminary consultation" so long as it is conducted "with a view toward retention") (citations omitted).

 While it is not necessary to our decision, one of plaintiffs' filings in this case supports the view that even under their own narrow view of what occurred here — that is, that Mr. Dollinger's representation of Ms. Lask was limited to obtaining the settlement agreement between Ms. Narbone and Ms. Lask, rather than one between Ms. Franzone and Ms. Lask — the substantial relationship test is still met.  Plaintiffs have made a filing in which they state that "[t]he facts surrounding the Lask-Narbone Settlement Agreement will be an issue at trial concerning defendant Lask's motives and legal malpractice as well as being directly relevant to other claims in her treatment of Ms. Franzone."  See Memorandum of Law in Opposition to

Defendant's Motion to Seal Docket Entries 28 and 33, filed Aug. 11, 2014 (Docket # 59), at 7. Plaintiffs later repeat that "the relationship between Ms. Lask, Ms. Franzone and Ms. Narbone, and the settlement reached between Ms. Lask and Ms. Narbone coupled with the duality of the one reached between Ms. Narbone and Ms. Franzone, will be core to the claims of legal malpractice." Id. at 8. These statements suggest that communications about the Narbone-Lask settlement reflect "common factual issues that are material to the adjudication of the prior and current representations." Mitchell, 2002 WL 441194, at *8.

Accordingly, we find that a substantial relationship exists between Mr. Dollinger's prior representation of Ms. Lask and the issues in the present lawsuit.

C.  Access

Turning to the remaining prong of the disqualification analysis, "[o]nce it is established that a substantial relationship exists between the prior and current matters, it is presumed that counsel who participated in both had access during the first litigation to confidential information that would be relevant in the second. This presumption, however, is rebuttable." Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 392-93 (S.D.N.Y. 2010) (citations omitted); accord Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 518 F.2d 751, 753-54 (2d Cir. 1975); Leslie Dick Worldwide, Ltd. v. Soros, 2009 WL 2190207, at *12 (S.D.N.Y. July 22, 2009) (collecting cases); Wieme v. Eastman Kodak Co., 2004 WL 2271402, at *2 (W.D.N.Y. Sept. 7, 2004).

Plaintiffs cannot rebut this showing because the confidential information at issue is the very information that Ms. Lask communicated to Mr. Dollinger. Thus, Mr. Dollinger obviously had "access" to it. This case is thus a far cry from the cases where there may be an attorney who nominally represented a client but who played no role in the earlier representation. See, e.g.,

GAF Corp. v. Heyman, 559 F. Supp. 748, 751 (S.D.N.Y. 1983) ("[W]hen a lawyer plays a peripheral role in a matter, spending a short time on tasks such as legal research, he may later rebut the presumption that he received client confidences."). "[O]nce it is established that an attorney's role in a prior substantially related case was more than peripheral, such that she was in a position to receive client confidences, the inquiry ends." Leslie Dick Worldwide, 2009 WL 2190207, at *14 (internal citations and quotation marks omitted). Mr. Dollinger was the only attorney to receive the confidences. Thus, "the inquiry ends" as Mr. Dollinger obviously had access to the material at issue.

    D.    Waiver

Plaintiffs assert that the information communicated to Mr. Dollinger is "in the public domain" and that Ms. Lask "waived" her privilege when she disclosed certain information to Ms. Franzone. Pl. Mem. at 10, 14. Plaintiffs assume that these assertions should affect the disqualification analysis but they cite no cases to support this argument either in their brief or the post-hearing letters. Certainly, case law has held that the attorney-client privilege can be waived for certain purposes by disclosing privileged communications to persons outside the attorney-client relationship. See, e.g., Strougo v. BEA Assocs., 199 F.R.D. 515, 522 (S.D.N.Y. 2001). But we are unaware of any case law suggesting that disclosure to others of otherwise privileged communications to an attorney alters the well-settled test for determining whether that attorney should be disqualified.

In any event, the record does not permit us to find that a "waiver" occurred as to all material matters that Ms. Lask discussed with Mr. Dollinger in May 2011. Notably, the mere fact that Ms. Lask communicated information to a third party that relates to the events that she conveyed to Mr. Dollinger in May 2011 would be insufficient to show a "waiver" in any case.

See, e.g., Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981) (the attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts") (citations omitted).  There is no evidence that Ms. Lask recounted the actual back-and-forth of the conversations between her and Mr. Dollinger, let alone the entirety of these conversations, to anyone else as opposed to providing documents or information that were discussed during those conversations.

  E. The Reason for the Hearing

We conclude by noting the reason the Court held the in camera hearing, since it is an unusual event and it is rare that a similar hearing would need to be held in other cases.  For the usual motion to disqualify counsel, a court is able to evaluate the scope of the first representation based on the nature of litigation relating to the first representation.  See, e.g., Revise Clothing, 687 F. Supp. 2d at 393.  Here, however, the earlier representation did not involve litigation and thus could not be evaluated based on any external manifestation of the representation.  Rather, it had to be evaluated based on the subject areas of the discussions between client and counsel.

  The Court is aware that in evaluating the "access" prong of the disqualification test, case law holds that "a court should not require proof that an attorney actually had access to or received privileged information while representing the client in a prior case."  Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 740 (2d Cir. 1978).  The testimony regarding the communications between Ms. Lask and Mr. Dollinger, however, was not for the purpose of applying the "access" prong of the inquiry but rather for purposes of applying the "substantial relationship" prong.  See id. at 739-40.  Given the divergent and sparse descriptions of what had transpired between Mr. Dollinger and Ms. Lask, the Court could not adjudicate the "substantial relationship" prong without a factual finding as to the subject matter of the earlier representation.

The decision to hold the hearing in camera followed from numerous decisions where testimony involving privileged matters has been presented in camera to the court.  See, e.g., In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 386 (2d Cir. 2003) (in camera review is "a practice both long-standing and routine in cases involving claims of privilege"); In re Dreier LLP, 482 B.R. 863, 865 (Bankr. S.D.N.Y. 2012) (on motion to disqualify expert, party permitted to "submit a post-hearing in camera affidavit setting forth the specific relevant privileged and confidential information it alleges was disclosed to" the expert).[4] Because it was claimed that these conversations were privileged, the Court weighed the public and other parties' interests in access to this material against the strong privacy interests of Ms. Lask in maintaining the confidentiality of any privileged information.  Following Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006), we concluded that this testimony must not be heard in public and noted that "[t]o do otherwise would destroy the purpose of the privilege."  Jan. 28 Order at 1 (citing Travelers Indem. Co. v. Excalibur Reinsurance Corp., 2013 WL 4012772, at *9 (D. Conn. Aug. 5, 2013) (sealing "information

---

[4] See also Zivali v. AT&T Mobility LLC, 2010 WL 5065963, at *1 (S.D.N.Y. Dec. 6, 2010) (permitting submission of "ex parte declarations necessary to establish the basis for the claims of privilege"); Donjon Marine Co., Inc. v. Buchanan Marine, L.P., 2010 WL 2977044, at *2-3 (D. Conn. July 21, 2010) ("[T]he Court will conduct an in camera review of any other statements reviewed by witnesses as to which the privilege has asserted"); In re Darrow's Ridge, LLC, 2009 WL 3254479, at *1 (Bankr. D. Conn. Oct. 7, 2009) (giving litigant "the opportunity to substantiate certain claims of privilege" in an affidavit "filed for the court's in camera review") (citation omitted); Procter & Gamble Co. v. Ultreo, Inc., 574 F. Supp. 2d 334, 335 (S.D.N.Y. 2008) (noting that the court had been provided "with an ex parte affidavit in support of [a] privilege claim"); Children First Found., Inc. v. Martinez, 2007 WL 4344915, at *3 (N.D.N.Y. Dec. 10, 2007) ("[A]n explanation of why the specific document is protected by one of the privileges[] w[as] to be filed under seal for an in camera review."); Eugenia VI Venture Holdings, Ltd. v. Chabra, 2006 WL 1293118, at *1 (S.D.N.Y. May 10, 2006) ("Plaintiff may include an ex parte affidavit explaining why each document (or a portion of it) is privileged.").

protected by the attorney-client privilege")). While testimony containing attorney-client privileged communications is typically presented to courts in the form of written affidavits, the Court believed that any conflicts in the testimony could be resolved more speedily if the testimony was presented orally.

Finally, given that Mr. Dollinger and Ms. Lask were both parties to the conversations at issue, the Court deemed it unnecessary to follow the usual procedure of ex parte disclosure of the privileged matters and to permit each to hear the other's sworn testimony.

After the testimony at the hearing concluded, Mr. Dollinger stated for the first time that he wished to question Ms. Lask, an issue that he raised again in a post-hearing letter in the context of seeking to question her credibility. The Court might have allowed such cross-examination except that the Court had stated in its Order that the Court would be questioning the witnesses. This Order benefitted Mr. Dollinger by not requiring him to be questioned by Ms. Lask on the mound of accusations that were contained in Ms. Lask's submissions. See, e.g., Def. Mem. at 1-5; Exs. E, F, G, H, I to Grossi Decl.; Lask June Decl. ¶ 7; Vexatious State & Federal Cases of Dollinger as a Pro Se Defendant or Plaintiff (annexed as Ex. C to Lask June Decl.); Memorandum of Law in Support of Defendant's Motion for an Injunction & Seal, filed July 24, 2014 (Docket # 50), at 12-14. Having not raised the issue of cross-examination before the hearing, it would obviously have been unfair to Ms. Lask to allow Mr. Dollinger to question her without warning. Because Mr. Dollinger was aware from the Jan. 28 Order that there would be no such cross-examination, he never sought reconsideration, and he made no objection to the Court's proceeding with questioning both him and Ms. Lask, we deem any assertion that the

Court should have proceeded otherwise as untimely and without merit.[5]

III. CONCLUSION

For the foregoing reasons, Ms. Lask's motion to disqualify plaintiffs' counsel (Docket # 18) is granted. We emphasize that "[d]isqualification is not a sanction." United States v. Quest Diagnostics Inc., 734 F.3d 154, 168 n.21 (2d Cir. 2013) (citation omitted). Thus, this Opinion and Order shall not be construed as making any such ruling.

A conference on this case will be held on Monday, May 18, 2015, at 2:00 p.m. in Courtroom 6-B, 500 Pearl Street, New York, New York 10007. If a new attorney has not filed a notice of appearance on this case by such date, plaintiffs shall appear at this conference in person. Mr. Dollinger is directed to inform plaintiffs of these requirements.

Dated: March 26, 2015
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[5] In a letter sent after the hearing, Mr. Dollinger for the first time suggested that there is testimony from Ms. Franzone that bears on the issue in this case. Again, Mr. Dollinger was fully informed of the subject of the hearing and never raised this issue until after the hearing was concluded. In any event, Ms. Franzone in fact submitted an affidavit as part of the briefing, see Declaration of Plaintiff Georgette Franzone, dated June 26, 2014 (annexed as Attach. 2 to Pl. Mem.).

15